# WILLIAM A. HENSON

*v.*

## JOHN W. WESTCOTT *et al.*

1. FRAUD—*as affecting subsequent purchaser from fraudulent vendee.*
Where the owner of a farm in this State, upon the representation of
a stranger that he owned a large tract of land and herd of cattle in
Texas, executed to him a deed for his farm, in consideration of 160 acres of
the Texas land and 200 head of cattle, to be conveyed and delivered on the
arrival of the parties in Texas, and the parties started to Texas in company,
and on the way, the stranger, in the presence and with the knowledge of
his grantor, and without an objection on his part, sold and conveyed the
Illinois farm to a third party, who paid for the same, it was *held,* that,
although the representations as to the ownership of land and cattle in
Texas by the stranger proved to be false and fraudulent, and of such a char-
acter as would entitle the original owner of the Illinois land to have the
deed set aside, if the title still vested in such stranger, yet, as against the
grantees who purchased from him with the knowledge and consent of the
original owner, he was entitled to no relief.

2. VENDOR'S LIEN—*waived by encouraging purchase from his vendee.* If
the vendor of land stands by and encourages and advises another to purchase
the land from his vendee, without intimating that he has a vendor's lien, he
will he deemed to have waived his lien as against such purchaser.

WRIT OF ERROR to the Circuit Court of Jefferson county;
the Hon. TAZEWELL B. TANNER, Judge, presiding.

Mr. THOMAS S. CASEY, and Mr. W. J. KERR, for the plain-
tiff in error.

Mr. C. H. PATTON, for the defendants in error.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the
Court:

The bill in chancery in this case, filed by William A. Hen-
son, sets out that complainant, in 1872, was the owner of and
residing upon 240 acres of land in Jefferson county, in this
State; that in September of that year, Asa W. Chambers came
to the house of complainant; represented that he lived in
Brazos county, Texas; that he owned several thousand head

of cattle and 1400 acres of land in that county, and claimed to be a relative of complainant's wife.

After tarrying with complainant for some time, Chambers made an overture to him for the purchase of complainant's farm, and proposed to complainant to give him 200 head of cattle and 160 acres of land in Brazos county, Texas, for his said land in Jefferson county; that complainant accepted the proposition, and, in October, 1872, made to Chambers a deed of complainant's land in Jefferson county, for the consideration expressed in the deed, of $1500, and Chambers gave to complainant an obligation to pay him 200 head of stock cattle on or before the first day of May following, and a bond for a deed of the 160 acres of land in Brazos county, Texas, to be selected by complainant anywhere in the 1400-acre tract; that Chambers was to go with complainant to Texas; that soon after, complainant, his wife and Chambers started for Brazos county, Texas, by way of St. Louis; that they stopped in St. Louis, and while there, Chambers sold the land in question to the defendants, John W. and William B. Westcott, for $900 in goods; that when complainant got ready to start from St. Louis, Chambers represented that it would be better for him to go with the goods, and so complainant went on his way alone, to Brazos county, Texas. When he arrived there, he found that Chambers had no cattle or land there, and that no such man was ever known to have been in the county, and that every representation made by Chambers was false and fraudulent.

The bill charges that the Westcotts had notice of the circumstances of the fraud practiced by Chambers, and that they were participants therein. The prayer of the bill was, that the respective deeds from complainant to Chambers, and from the latter to the Westcotts, might be declared fraudulent and null, and be canceled, and for general relief.

The Westcotts answered, that they were merchants in St. Louis; that they knew nothing of the fraudulent conduct of Chambers; that they were before wholly unacquainted with him; that complainant recommended the trade with him; that

they bought the land in good faith, and deny all participation in any fraud.

Upon final hearing, the court below dismissed the bill, and the complainant appealed.

The proof shows plainly enough the perpetration of a base fraud by Chambers upon the complainant, and were the land yet in the hands of Chambers, the title to relief as against him would be clear. But the Westcotts are the holders of the land as purchasers from Chambers for a valuable consideration paid, and to entitle to relief as against them, they must be connected with the fraud of Chambers, or be affected with notice of the equity of complainant. The evidence entirely fails to involve the Westcotts in any complicity with the fraud of Chambers, and no more can be pretended as against them than that there were circumstances of suspicion which were sufficient to put them on inquiry. The evidence in this direction was not of a strong character, and it was fully overcome by complainant's own conduct in encouragement of the trade made by the Westcotts for the land.

The evidence shows that complainant and Chambers were in St. Louis some four days, from Saturday to Tuesday. During this time, the trade was made between Chambers and the Westcotts of the land for $1000 in goods, and the goods actually delivered to Chambers. Chambers and complainant both went to the store of the Westcotts, and the trade was there negotiated and consummated in the presence of complainant, an abstract of the title being exhibited as showing a good title to the land in Chambers, and complainant actually received himself some $40 or $50 of the goods by order of Chambers. Under such circumstances, complainant being present, and himself witnessing the purchase being made by the Westcotts of the land, they, the Westcotts, were not put upon inquiry, but the complainant was put upon disclosure; it was for him to have made known any claim of interest he had in the land, and not have allowed innocent purchasers to part with their property for it, without declaring his objection, if any he had.

Waiving the consideration of complainant's words of actual

encouragement of the purchase of the land for the goods, as testified to by the defendants, complainant himself testifies: "I made no objection to the trade. I still hoped Chambers would comply with his contract." This conduct of acquiescence in the purchase made by the Westcotts must effectually estop complainant from all claim of equitable relief against them. 1 Story Eq. Jur. § 385.

It is insisted that there was here a vendor's lien for the unpaid purchase money, which complainant was entitled to have enforced, it appearing the Westcotts had notice the purchase money was not paid.

It was said by this court, in *Cowl et al.* v. *Varnum*, 37 Ill. 185, that this lien arises from principles of equity, independent of any express contract, upon the mere supposition of the intention of the parties, and whenever, from any circumstance, the court can infer that the vendor did not rely upon the lien for his security, the courts have treated it as waived.

From what has already been said, it must be manifest that, under the circumstances of this case, there are no principles of equity which would favor the assertion of this vendor's lien against the Westcotts. Complainant did not intimate to them that he had a vendor's lien upon the land. Had he done so, we can not suppose they would have parted with property for the land, of its full value, as they testify, and so the complainant must have known. We must regard that the complainant, by his conduct, waived his vendor's lien, or else consider him as liable to the imputation of a fraud upon the Westcotts in allowing them to part with their goods for the land upon the supposition that they were getting a good title thereto, without disclosure to them of his vendor's lien. In his own language, he made no objection to the trade; he still hoped Chambers would comply with his contract.

We think, from the circumstances, it may be inferred that, as against the Westcotts, the complainant did not rely upon the vendor's lien for his security, and that it is to be treated as waived.

The decree must be affirmed.

*Decree affirmed.*